UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAY YARDLEY,
an individual,   Case No.: 8:16-cv-01385-JSM-AEP

      Plaintiff,
v.

OCWEN LOAN SERVICING, LLC,
a foreign limited liability company,

      Defendant.
_____/

**PLAINTIFF'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION TO STAY
ACTION PENDING A RULING ON THE DEFINITION OF ATDS**

**COMES NOW**, Plaintiff, JAY YARDLEY (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby files *Plaintiff's Response in Opposition to Defendant's Motion to Stay Action Pending a Ruling on the Definition of ATDS*. In support thereof, Plaintiff states as follows:

**I.**     **INTRODUCTION**

On July 10, 2015, the Federal Communications Commission (hereinafter, "FCC") issued a ruling (hereinafter, "2015 FCC Order") clarifying definitions and provisions of the Telephone Consumer Protection Act, 47 United States Code, Section 227, *et seq*. (hereinafter, "TCPA"). In response, multiple companies, trade associations, and business entities filed petitions with the United States Court of Appeals for the District of Columbia seeking a review of the 2015 FCC Order, which consolidated into the case of *ACA International, et al. v. Federal Trade Communication Commission and United States of America*, Case No. 15-1211 (D.C. Cir. July 10, 2015) (hereinafter, "*ACA International*").

1

Defendant Ocwen Loan Servicing LLC's *Motion to Stay Action Pending a Ruling on the Definition of ATDS* argues that the outcome of *ACA International* will extinguish or significantly curtail Plaintiff's TCPA claim, or in the alternative, will dictate the scope of issues and discovery necessary to complete this case [Dkt. 13 at p. 2, 9]. Generally, Defendant posits that the D.C. Circuit Court of Appeals may rewrite the definition of an automatic telephone dialing system ("ATDS") in such a way that would exclude the dialers used by Defendant. Importantly, the 2015 FCC Order is supported by prior FCC rulings, years of legal precedent, and is entitled to significant deference, yet Defendant seeks an indefinite stay of this case pending the decisions in *ACA International* based on mere speculation and the hypothetical impact of what the D.C. Circuit Court *could or might* rule regarding *ACA International*.

Importantly, in addition to the reasons articulated below, the Court should not stay this action pending a decision from the D.C. Circuit Court as Defendant also independently violated the TCPA by repeatedly utilizing an artificial or pre-recorded voice to call Plaintiff. Even if the D.C. Circuit Court decides to re-define the definition of an ATDS, Defendant cannot avoid liability for its calls using an artificial or pre-recorded voice under the TCPA, as *ACA International* will have no impact on the use of such technology that Defendant used in violating Plaintiff's rights under the TCPA.

## II.   PROCEDURAL BACKGROUND

On June 2, 2016, Plaintiff filed a two-count Verified Complaint against Synchrony Bank (hereinafter, "Synchrony" or "Defendant") alleging violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, "FCCPA") and the TPCA, including violations for repeated phone calls initiated by Defendant using an ATDS, a predictive telephone dialing system (hereinafter, "PTDS") and/or an artificial or pre-recorded voice

(hereinafter, "APV"). On or about August 12, 2016, Defendant filed an *Answer and Affirmative Defenses* [Dkt. 9]. Subsequently, eight months into this litigation, Defendant filed a *Motion to Stay Action Pending a Ruling on the Definition of ATDS* (hereinafter, "Motion to Stay") [Dkt. 13] on or about February 17, 2017. Plaintiff hereby responds in opposition to Defendant's Motion to Stay and respectfully requests entry of an Order denying the same.

### III.   LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Whether to stay the proceedings is entrusted to the discretion of the district court. *Id.* at 254-55 (stating "[h]ow this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance"). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997), *citing Landis*, 299 U.S. at 255. "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255.

While a district court possesses discretion to stay a case pending the resolution of similar proceedings in another forum, "the district court must limit properly the scope of the stay. A stay must not be 'immoderate.'" *Ortega Trujillo v. Conover & Co. Comms., Inc.* 221 F.3d 1262, 1264 (11th Cir. 2000) (citing *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982)). In determining whether a stay is immoderate, the Eleventh Circuit cautioned that it will examine the "scope of the stay (including its potential duration) and the reasons cited by the district court for the stay." *Ortega*, 221 F. 3d at 1264 (citing *Hines v. D'Artois*, 531 F.2d

726, 733 (5th Cir. 1976)); *Mancini v. JPMorgan Chase Bank N.A.*, No. 1:15-cv-61524-UU, 2016 WL 1273185 (S.D. Fla. March 28, 2015).

Ultimately, a court "must weigh competing interests and maintain an even balance," and "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis*, 299 U.S. at 254-55. In addition, a stay should not be for an "indefinite duration in the absence of a pressing need." *Id.* A district court should also consider the public interest in deciding whether to grant a stay. *Id.* at 256. "In determining whether to grant a stay, courts generally examine three factors: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and on the court." *Alps South, LLC v. The Ohio Willow Wood Co.*, No. 8:09-cv-00386-T-EAK-MAP, 2010 WL 2465176 (M.D. Fla. June 16, 2010). Altogether, the legal standard with respect to staying a proceeding—when applied to the present matter—supports the denial of Defendant's Motion to Stay.

IV.     **RELEVANT FACTS AND ALLEGATIONS THAT MUST BE TAKEN AS TRUE**

1.     On or about March 19, 2015, at approximately 2:45 p.m. EST, Defendant called Plaintiff's cellular telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt [Dkt. 1 ¶ 31].

2.     When Plaintiff answered the immediately-aforementioned call, Plaintiff eventually spoke with a live representative and advised Defendant of Plaintiff's financial hardship as a result of Plaintiff's medical situation. Further, Plaintiff revoked any and all consent for Defendant to contact Plaintiff on his cellular telephone in an attempt to collect the Debt [*Id*. at ¶ 32].

3. Despite Plaintiff revoking any alleged prior consent for Defendant to call Plaintiff's cellular telephone, and despite Plaintiff's subsequent and repeated demands that Defendant cease calling his cellular telephone, Defendant made *at least* forty-five (45) calls to Plaintiff's cellular telephone using an ATDS, a PTDS, or an APV [*Id.* at ¶¶ 37-187].

4. Upon information and belief—and based upon Defendant's pattern and practice and its involvement in previous TCPA litigation—Defendant made calls to Plaintiff's cellular telephone using an ATDS, a PTDS, or an APV [*Id.* at ¶¶ 15, 17].

5. Moreover, upon information and belief—and based upon Defendant's pattern and practice—at all material times herein, Defendant made calls to Plaintiff's cellular telephone using an ATDS and/or PTDS, including but not limited to the following systems:

   a. UIP version 6.6 Aspect Dialer;

   b. Avaya Proactive Contact; and/or

   c. Davox autodialer.

[*Id.* at ¶ 17].

## V. ARGUMENT AND MEMORANDUM OF LAW

The Court likely observed the recent abuse of stay motions *en vogue* among the TCPA defense bar the past few years. Defendant contends that the forthcoming decision of the D.C. Circuit in *ACA International* warrants an indefinite stay because the ruling may *potentially* address issues that *could* impact the extent of Defendant's liability in this case. According to Defendant, the predominant issue before the D.C. Circuit concerns the definition of an ATDS, however, it remains to be seen how this issue will be addressed. Further, even if the DC Circuit Court of Appeals alters the definition of ATDS, the decision will not allow Defendant to avoid any discovery or liability in this case, as the allegations in the Complaint also involve independent

violations of the TCPA based on Defendant's use of an APV on the very same calls, as well as independent violations of the Florida Consumer Collection Practices Act (hereinafter, the "FCCPA") based on the same set of operative facts. The Court should deny Defendant's Motion because the decision in *ACA International* is highly unlikely to impact, simplify, or streamline this case for purposes of judicial economy. Therefore, a stay would guarantee prejudice to Plaintiff.

      **A.**      **The Timing Of A Decision In *ACA International* Is Speculative And A Stay Would Prejudice Plaintiff.**

The timing of a future decision by the D.C. Circuit in *ACA International* is far too speculative to warrant a stay. In its Motion to Stay, Defendant suggests that "[Plaintiff] will not be prejudiced by a short stay of these proceedings" and that "given that *ACA* is fully briefed and was argued nearly four months ago, the requested stay will likely be minimal." [Dkt. 9 p. 9]. However, Defendant cannot state with certainty as to when the D.C. Circuit will render its decision, nor can anyone else forecast exactly when the D.C. Circuit might make its decision. *ACA International* was docketed on July 10, 2015. Although oral arguments occurred October 19, 2016, no indication exists as to when the D.C. Circuit will decide *ACA International*, and therefore Defendant essentially seeks a stay of indeterminate length. "Within the Eleventh Circuit, stays of an indefinite nature have been found to be 'immoderate'" and accordingly denied. *Myron v. Rodriguez*, No. 3:06-cv-1061-J-TEM, 2008 WL 516753, *3 (M.D. Fla. Feb. 22, 2008) (*citing Trujillo v. Conovo & Co. Communications, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000)); *see Roath v. Bank of New York Mellon*, No. 2:15-cv-286-FtM-38DN, 2015 WL 4349828, *2 (M.D. Fla. July 14, 2015) (denying motion for stay pending another court's ruling on a case, finding the requested stay was too indefinite in scope).

Perhaps more importantly, another independent basis for denying the indefinite stay sought by Defendant results from the fact that the D.C. Circuit's decision regarding *ACA International*

6

will not resolve the matter definitively.  The unsuccessful party in *ACA International* will likely appeal to the decision to the Supreme Court, thereby further extending the delay and prejudice to Plaintiff.  *See Lathrop v. Uber Technologies, Inc.*, No. 14-cv-05678-JST, 2016 WL 97511 (N.D. Cal. Jan. 8, 2016) (denying motion to stay based on pendency of *ACA International*); *Schwyhart v. AmSher Collection Services, Inc.,* No. 2:15-cv-01175-JEO, 2016 WL 1620096, *3 (N.D. Ala. April 22, 2016) (noting "[t]here is always the possibility that the D.C. Circuit's decision will be appealed to the Supreme Court, adding a further layer of indefinite—and perhaps lengthy—delay were a stay to be granted here"); *Coniglio v. Iqual Corp. and Nationstar Mortgage, LLC*, No. 8:15-cv-2406-T-33-AEP, 2015 WL 8521288, at *1 (M.D. Fla. Dec. 3, 2015) (stating "Eleventh Circuit precedent establishes that a grant of certiorari by the Supreme Court does not in itself change the law…[u]ntil the Supreme Court issues a decision that actually changes the law, we are duty bound to apply this Court's precedent and to use it and any existing decisions of the Supreme Court to measure the likelihood of a plaintiff's success on the merits") (internal citations omitted).

Given the current status of *ACA International*, and the appellate proceedings that likely will follow any forthcoming decision, the entry of a stay pending the resolution of *ACA International* would constitute a prejudicial and indefinite stay, and would derail this litigation to prejudice Plaintiff.  *See CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284 (11th Cir. 1982) (finding stay order imposed an indefinite delay on appellant's federal claim and effectively placed him out of court).  Accordingly, this Court should deny Defendant's Motion to Stay.

    **B.**    **The ACA Appeal Will Not Likely Result In A Change In The Law As The Clarifications In The 2015 FCC Order Are Supported by Prior FCC Rulings And Court Decisions.**

Prior rulings from the FCC itself and decisions of federal courts across the country align with and support clarifications in the 2015 FCC Order regarding the definition of an ATDS.  The

definitions at issue are not new, as numerous courts adopted the 2015 FCC Order definitions over the years, and the D.C. Circuit will likely uphold the definitions at issue consistent with their long-standing history. Since 2003, the FCC routinely implemented the TCPA and entered orders as well as rulings regarding the TCPA. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC Report and Order, CG Doc. No. 02-278, 18 FCC Rcd. 14014 (July 2, 2003) (hereinafter, "2003 FCC Order"); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC Declaratory Ruling, CG Doc. No. 02-278, 23 FCC Rcd. 559 (Jan. 4, 2008) (hereinafter, "2008 FCC Ruling").

The 2003 FCC Order firmly established the explanation that "capacity" in the context of an ATDS includes equipment with the "potential ability" to store or produce telephone numbers to be called using a random or sequential number generator and to dial such calls. *See* 2003 FCC Order at ¶ 131. Thirteen (13) years ago, the Commission explained in the 2003 FCC Order that the definition of an ATDS includes equipment with the capacity—not the current capability—to store or produce telephone numbers. *Id.* Furthermore, the 2008 FCC Ruling reiterated the definition and explanation provided in the 2003 FCC Order. *See* 2008 FCC Ruling at ¶ 12. Rather than add to or amend the "capacity" aspect of the TCPA, the 2015 FCC Order simply explained that a "present use" or "current capacity" test <u>cannot</u> determine whether equipment presently has the requisite capacity to qualify as an ATDS. *See* 2015 FCC order at ¶¶ 10-16. Accordingly, this Court should deny Defendant's Motion for Stay.

    **C.**    **The FCC's Regulations Defining An ATDS Will Not Dispositively Determine This Case And Are Highly Unlikely To Be Overturned.**

Defendant's stay request must be denied due to its failure to address the pertinent fact that, as alleged by Plaintiff, Defendant utilized an APV and/or PTDS as well as an ATDS [Dkt. 1 at ¶¶ 15-187). While a change to the FCC's definition of an ATDS could conceivably impact autodialed

8

calls, the ruling would in no way impact violations of the TCPA involving calls with a pre-recorded voice. *See Vaccaro v. CVS Pharmacy, Inc.*, 13-CV-174-IEG RBB, 2013 WL 3776927, at *1 n.2 (S.D. Cal. 2013) (noting that because the TCPA is "written in the disjunctive, plaintiffs can state a claim under the TCPA by alleging the use of (1) an 'artificial or prerecorded voice' or (2) an ATDS.").

Furthermore, Defendant fails to fully or adequately explain the unpersuasive "capacity" argument it relies on regarding the *ACA International* petitions. The "capacity" argument relies upon the questionable assertion that the highly-sophisticated automated dialing computer systems in use today supposedly lack the very basic "capacity" to "store or produce telephone numbers to be called, using a random or sequential number generator" because these systems are now programmed to generate lists of numbers using various criteria and to make calls from such lists. The FCC regulation that Defendant criticizes merely allows the programmability of these autodialing systems to be considered in determining the "capacity" of these systems. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7974 (2015) (clarifying a 2003 FCC order to explain that its conclusion that a device could meet the definition of an automatic telephone dialing system "when paired with certain software" was a rejection of any 'present use' or 'current capacity' test"). Accordingly, this Court should deny Defendant's Motion to Stay.

      **D.**    **Numerous Federal Courts—Including This Court And Sister Florida Federal District Courts—Have Denied Motions To Stay Pending *ACA International*.**

Significantly, several federal courts—including the Middle and Southern Districts of Florida—repeatedly refused to stay TCPA cases based on the pendency of *ACA International*, including a decision by this Court within the last month. *See Gosneigh v. Nationstar Mortgage, LLC*, Case No. 8:16-cv-3040-T-33AEP, 2016 WL 435818 (M.D. Fla. Feb. 1, 2017) (denying

Defendant's motion to stay proceeding in anticipation of a ruling in *ACA International,* finding a decision in *ACA International* will not determine the outcome as the plaintiff alleged use of both an automatic telephone dialing system ("ATDS") and an artificial or pre-recorded voice ("APV"), and the *ACA International* ruling will only address the definition of an ATDS and not an APV). *Id* at *1-2; *Rodriguez v. DFS Services, LLC*, 2016 WL 369052 (M.D. Fla. Feb. 1, 2016) (denying motion to stay based on pendency of *ACA International,* finding the challenges before the D.C. Circuit will have no effect on the viability of plaintiff's lawsuit); *Nelson v. Nationstar Mortgage LLC*, Case No. 6:16 cv-00071-GAP-KRS (M.D. Fla. Sept. 13, 2016) (denying motion to stay based on pendency of *ACA International*); *Sliwa v. Bright House Networks, LLC*, 2016 WL 3901378, *4 (M.D. Fla. Jul. 19, 2016) (denying motion to stay as a result of "the indefinite length and uncertain outcome of [an] appeal" and as claims will proceed despite the D.C. Circuit's ruling); *Mancini v. JPMorgan Chase Bank, N.A.*, 2016 WL 1273185 (S.D. Fla. Mar. 23, 2016) (denying motion to stay based on pendency of ACA International, finding that an indefinite stay solely in the interests of judicial economy is insufficient justification for stay); *Glaser v. Branch Banking and Trust Company*, Case No. 1:16-cv-215 (M.D. N.C. Feb. 10, 2017) (denying Defendant's motion to stay proceeding in anticipation of a ruling in *ACA International*, finding that due to the disputed relevance of *ACA International*, the uncertain timing of a ruling in *ACA International*, and considering "the lack of authoritative value such a ruling may have to this Circuit, the motion to stay should be denied"); *Caudill v. Wells Fargo Home Mortgage, Inc.*, 5:16-cv-00066-DCR-EBA (E.D. Ky. July 11, 2016) (denying motion to stay based on pendency of *ACA International*, finding "that the length of the anticipated stay is uncertain"); *Hamm v. Wells Fargo Bank, N.A.*, 1:16-cv- 00778-MHC (N.D. Ga. Sept. 7, 2016) (denying motion to stay based on pendency of *ACA International*, holding that "…although oral argument has been scheduled in the D.C. Circuit for October, there is no timetable for the litigation to conclude. The Court is unwilling to stay this action for an indefinite amount of

time when it is uncertain to affect the outcome"); and *Leachman v. Discover Financial Services, LLC*, No. 15-cv-62120-PAS (S.D. Fla. Jan. 13, 2016) (finding, in part, "[i]n light of the disputed relevance of the FCC's July 2015 Order, and the indeterminate timeline of its appellate review, Defendant's Motion to Stay pending appellate review of the FCC Order is denied").

Moreover, while numerous courts have premised the denial of motions to stay on the indefinite duration of the stay, other courts referenced the fact that previous FCC Orders and case law addressed many of the issues the D.C. Circuit may review in *ACA International* and which predate the 2015 FCC Order. *See Adamo v. Synchrony Bank*, 6:16-cv-530-Orl-37GJK (M.D. Fla. July 6, 2016) (denying motion to stay based on pendency of *ACA International*, finding "the matter pending before the Circuit Court for the District of Columbia will be merely persuasive authority in the U.S. Court of Appeals for the Eleventh Circuit"); *Schwyhart v. AmSher Collection Services, Inc.*, 182 F.Supp.3d 1239 (N.D. Ala. Apr. 22, 2016) (denying motion to stay based on pendency of *ACA International* because of the possibility of the D.C. Circuit setting aside provisions of FCC Order is too speculative, any forthcoming decision will not have a direct impact, and the court was unwilling to indefinitely stay case); *Jones v. AD Astra Recovery Services, Inc.*, 2016 WL 3145072 (D. Kan. Jun. 6, 2016) (denying motion to stay based on pendency of *ACA International*, finding that the potential for defendant to engage in greater discovery does not constitute one of the "rare circumstances" contemplated under *Landis*); *Rivera v. Exeter Finance Corp.*, No. 15-cv-01057-PAB-MEH-2016, 2016 WL 374523, at *2 (D. Col. Feb. 1, 2016) (denying stay based on potential decrease in evidentiary quality and party/witness availability, and finding the potential impact of *ACA International* "speculative at best."); *Kafatos v. Uber Technologies, Inc.*, No. 15-cv-03727-JST, 2016 WL 97489 (N.D. Cal. Jan. 8, 2016) (denying stay based on pendency of *ACA International* because, although the D.C. Circuit decision could clarify certain questions of law,

the parties still require discovery on factual issue regardless of the outcome of *ACA International*, and because defendant did not show this is a rare circumstance in which a stay pending the resolution of an appeal in another case is appropriate); *Lathrop v. Uber Technologies, Inc.*, 2016 WL 97511 (N.D. Cal. Jan. 8, 2016) (denying motion to stay based on pendency of *ACA International* because, *inter alia*, whichever party in unsuccessful in *ACA International* will likely appeal to the Supreme Court, thereby further extending the delay and prejudice to plaintiff); *O'Hanlon v. 24 Hour Fitness USA, Inc.*, 2016 WL 815357 (N.D. Cal. Mar. 2, 2016) (denying stay based on pendency of *ACA International* because it would cause substantial delay, issues pending before D.C. Circuit have already been litigated, and any forthcoming D.C. Circuit decision would not be binding); *Nussbaum v. Diversified Consultants, Inc.*, 2015 WL 5707147 (D. N.J. Sept. 28, 2015) (weighing four factors, determining that "unnecessary discovery and motion practice" did not set forth a clear case for hardship); and *Pritchard v. Comenity Bank*, 2016 U.S. Dist. LEXIS 89123, (D. N.J. July 5, 2016) (denying Comenity Bank's motion to stay, "finding that a stay on the basis of ACA International is not appropriate because the length of the stay is indeterminate"); and *Konopca v. Center for Excellence in Higher Education, Inc*., 2016 WL 4644461 (D. N.J. Sept. 6, 2016).

      Staying this matter pending the D.C. Circuit's decision, as requested by Defendant, would effectively stay this matter indefinitely.  Other courts deemed the indeterminable ruling date as a significant factor in determining whether a stay is appropriate.  *See Lathrop*, 2016 WL 97511 at *12.  Additionally, as discussed in *Lathrop*, the D.C. Circuit Court of Appeals is unlikely the last step since the unsuccessful party is "almost certain to appeal to the Supreme Court." *Id*.  Indeed, an indefinite stay of this matter only serves to prejudice Plaintiff, creating an increased likelihood that records and/or witnesses will become unavailable while the Court awaits a separate court's

ruling on the FCC's Order likely to have little to no impact on this case. Accordingly, this Court should follow the precedent established by *Rodriguez*, 2016 WL 369052, *Mancini*, 2016 WL 1273185, *Leachman*, No. 15-cv-62120-PAS (S.D. Fla. Jan. 13, 2016), and the like-minded district courts referenced above and deny Defendant's Motion to Stay.

   **E.**  **The *ACA International* Appeal Will Unlikely Result In A Change In The Law As The 2015 FCC Order Is Entitled to Extreme Deference.**

Defendant's Motion to Stay fails to mention that the D.C. Circuit will implement a deferential standard of review when ruling on the 2015 FCC Order. When an FCC order is challenged as being "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. 706(2)(A), the order will be upheld if the agency "articulated a rational connection between the facts found and the choice made." *ADX Commc'ns of Pensacola v. FCC*, 794 F.3d 74, 79 (D.C. Cir. 2015) (internal citations omitted). The review process will be "highly deferential" and the 2015 FCC Order will be presumed valid. *Vernal Enterprises, Inc. v. FCC*, 355 F.3d 650, 658 (D.C. Cir. 2004). In this circumstance, the D.C. Circuit will defer to the FCC's interpretation of its own rules and reasonable application of its own precedents. *ADX Commc'ns of Pensacola*, 794 F.3d at 79. In other words, the D.C. Circuit will begin under the premise that the 2015 FCC Order remains valid and will most likely defer to the FCC's own definition of an ATDS supported by previous court rulings and FCC Rulings. In light of the precedents established by the FCC and federal courts throughout the country, and in light of the deference extended to the 2015 FCC Order, the D.C. Circuit's decision in *ACA International* will unlikely impact this case. Even if the D.C. Circuit's decision impacted the present matter—which Plaintiff does not anticipate—any issues that may arise can be addressed through the parties' dispositive motions. *See Blanding v. Synchrony Bank,* 8:15-cv-02577-EAK-MAP (M.D. Fla. Sept. 16, 2016) (denying Motion to Stay and holding that "the parties may address any decision by the D.C. Court of

13

Case 8:16-cv-01385-JSM-AEP   Document 14   Filed 02/28/17   Page 14 of 16 PageID 711

Appeals through their dispositive motions"). Moreover, as noted above, Plaintiff's FCCPA claim arises from the same set of operative fact as his TCPA claim; therefore, nearly identical discovery shall be needed regardless of the *ACA International* decision. Accordingly, the Court should deny Defendant's Motion to Stay.

### F. Denial of Stay Will Not Prejudice Defendant.

Lastly, the Court should not grant Defendant's Motion to Stay as Defendant failed to establish any prejudice resulting from a potential denial of its Motion to Stay. "Being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity'" justifying a stay. *Lockyer v. Mirant Corporation*, 398 F.3d at 1112 (9th Cir. Feb. 10, 2005). The court in *Nussbaum v. Diversified Consultants, Inc.*, No. CIV. 15-600 AET-DEA, 2015 WL 5707147 (D. N.J. Sept. 28, 2015) denied a stay sought under similar facts. The *Nussbaum* defendant sought a stay based on the same *ACA International* petition, challenging the 2015 FCC Order considering equipment as an automated telephone dialing system for purposes of the TCPA, even if the equipment does not currently or presently have the capacity to dial numbers using a random or sequential number generator. The defendant in *Nussbaum* argued that the resolution of *ACA International* would determine one of the principal issues in that action, namely whether the defendant's calling equipment constituted an automatic telephone dialing system. The court in *Nussbaum* nonetheless denied the motion to stay finding that "[d]efendant focused on the hardship it would face if it loses *ACA International*, but did not assert any hardship that it would face if the stay in this case is not granted, beyond avoiding 'unnecessary discovery and motion practice.' Therefore, Defendant has not made out a clear case of hardship, and this factor weighs against granting a stay." *Id.* at *4. Similarly, the Court should deny Defendant's Motion to Stay.

## VI.     CONCLUSION

Plaintiff respectfully requests the Court deny Defendant's Motion to Stay in its entirety. Defendant cannot successfully show that the resolution in *ACA International* will impact the status of Defendant's dialing system. As this case involves Defendant's use of an automated or pre-recorded voice, even if the eventual D.C. Circuit ruling alters the definition of ATDS, the ruling on the definition of an ATDS will not limit discovery in this case, nor will it allow Defendant to avoid liability under the TCPA or FCCPA. Applying a stay in this matter would needlessly and detrimentally prejudice Plaintiff by delaying his action against Defendant, and conversely, denying the Motion to Stay would not detrimentally prejudice Defendant other than proceeding in this litigation. As such, Plaintiff respectfully requests that Defendant's Motion to Stay is denied, and requests any such other relief that is proper and just.

Dated: February 28, 2017

>    Respectfully submitted,
>
>    **LEAVENLAW**
>
>    /s/ *Aaron M. Swift*
>    **Ian R. Leavengood, Esq., FBN 10167**
>    **Aaron M. Swift, Esq., FBN 093088**
>    **Gregory H. Lercher, Esq., FBN 106991**
>    **Sara J. Weiss, Esq., FBN 115637**
>    Northeast Professional Center
>    3900 First Street North, Suite 100
>    St. Petersburg, FL 33703
>    Phone: (727) 327-3328
>    Fax: (727) 327-3305
>    consumerservice@leavenlaw.com
>    aswift@leavenlaw.com
>    glercher@leavenlaw.com
>    sweiss@leavenlaw.com
>    *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I filed a copy of the foregoing on this 28th day of February 2017 via the Court's CM/ECF system which will electronically provide and serve the foregoing *Plaintiff's Response In Opposition to Defendant's Motion to Stay Action Pending a Ruling on the Definition of ATDS* to the following counsel of record:

Douglas R. Sargent
Locke Lord LLP
525 Okeechobee Boulevard, Suite 1600
West Palm Beach, FL 33401
Tel: (561) 833-7700
dsargent@lockelord.com
*Attorneys for Defendant*

/s/ *Aaron M. Swift*
Attorney